IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF LINCOLN.

ARGUED AT MAY TERM, 1849.

---

## GEORGE H. HATCH *versus* SIMEON LAWRENCE & *als.*

Where a poor debtor, under bond given to liberate himself from arrest, duly cites his creditor, discloses personal property not exempted from attachment, and takes the oath prescribed; but within thirty days afterwards refuses to deliver the said property, to an officer, having a renewed execution to take it upon, his bond is thereby forfeited.

Although one of the conditions in the bond differ from the phraseology of the statute, so as to read that the debtor will " *deliver himself and go into close confinement,*" instead of reading that he will " *deliver himself into the custody of the keeper of the jail,* into which he is liable to be committed under said execution,*" the bond is nevertheless a *statute* bond.

DEBT, upon a poor debtor's bond. The case came up by appeal by the defendant upon a statement of facts from the District Court, REDINGTON, J.

The bond was dated June 24, 1843, and the principal in the bond cited the creditor, and disclosed before two justices of the peace and quorum, December 8, 1843, and the oath was properly administered to him.

The principal disclosed four tons of hay and a bunch of shingles, and stated that he was willing to turn out to the creditor, the shingles and so much of the hay as was not

exempted from attachment. The execution was renewed, and within thirty days for the disclosure, the officer demanded said hay and shingles upon said execution, which the debtor refused to deliver. The officer made a return accordingly upon the execution.

One of the conditions of the bond was, that the "debtor might deliver himself, and go into close confinement."

*Whitmore*, for defendants.

The defendants have not lost the benefit of the oath, by the debtor's neglect or refusal to turn out the hay and shingles disclosed, to the officer having the execution. The language of the statute is he, (the debtor,) shall derive no benefit from the certificate. R. S. chap. 148, § 29, 30, 31, 32 and 34.

The shingles were of no value for the purpose of satisfying the execution. They would not sell for enough to pay the expense of advertising. And the hay was exempt from attachment. R. S. chap. 114, § 28.

But if the Court shall be of opinion that the property should have been turned out by the debtor to the officer having the execution, the question presents itself, what has the debtor, (it will be seen that the forfeiture affects the debtor only, and not the sureties,) lost by the forfeiture referred to in sec. 34. He loses the benefit of the certificate. If imprisoned, he shall not be liberated, &c. Sec. 32, chap. 148.

We claim none of the benefits of the certificate in this suit. We do not need it, even as evidence that we have fulfilled the condition of the bond. The case finds the fact.

We say the provisions of sec. 34, have nothing to do with a suit on this bond. Neither the principal nor the sureties have agreed that the debtor or any third person shall not secrete the attachable property disclosed. This section of the statute clearly defines the penalty which shall attach to the debtor, if he secretes the property, and that penalty is sufficient to protect the rights of the creditor.

Again, if the Court should by any possibility come to the question of damages, we contend this bond is not a statute

bond. It contains a condition more onerous than the statute bond, viz. "*and go into close confinement.*" Sec. 20, chap. 148, R. S. See act of Feb. 9th, 1822.

See the act of 1848, entitled "an act additional for the relief of poor debtors, sec. 2d. It gives the defendants the right to have the damages, if any, assessed by the Court or jury, and the defendants choose to have the damages, if any, assessed by the jury.

If this bond is not a statute bond, why should the defendants suffer because the debtor has not complied with the provisions of the statute?

The certificate described in sec. 31, chap. 148, is only necessary when the debtor is imprisoned. *Kimball v. Irish,* 26 Maine, 447.

*J. S. Abbott,* for plaintiff.

The case shows that the debtor disclosed personal property not exempt from attachment, and that within thirty days it was properly demanded of him on a renewed execution ; and he refused to deliver it. Hence he can derive no benefit from having been admitted to the oath. R. S. chap. 148, § 34.

The plaintiff is entitled to judgment on the bond against the principal and surety. This has been decided at least twice, once in Somerset county in 1846, and again in 1848, in *Bates & al.* v. *Williams & als.* So that argument is unnecessary.

T̲ENNEY, J. — One of the conditions required by the statute in a bond given upon the arrest of a debtor on execution is, that he "will within six months thereafter, cite the creditor before two justices of the peace and of the quorum, and submit himself to examination, and take the oath prescribed," &c. R. S. chap. 148, § 20.

By the terms alone of this condition in the bond the forfeiture would be saved by its performance.

But if the statute by virtue of which the bond is given, requires in certain cases, that the debtor shall do something further, after he has taken the oath, to make the performance

available as a part of his duty under the bond, and he shall fail therein, there would still be a forfeiture.

One object of the statute in providing for the disclosure of a debtor arrested on execution is, that the creditor may know his pecuniary means, and if property subject to attachment is disclosed, what it is, and where it may be found, that it may be taken and disposed of, in partial or full satisfaction of the debt.

If the debtor should take the oath and receive the certificate, both in the forms prescribed in the Revised Statutes, chap. 148, sections 27 and 32, after having disclosed attachable property within his own control, (although the creditor may have a lien upon it,) and should fraudulently dispose of it, or omit to surrender it on a legal demand, so as to deprive the creditor of the benefit contemplated, the purposes of the disclosure would be lost to him, provided the oath notwithstanding should prevent a forfeiture. It is true, that by the latter part of the thirty-fourth section of the same chapter, another remedy is provided in such an event, but which may prove inadequate, where the debtor may again and again elude the vigilance of the creditor and protect the property, which it may appear by his oath, he may own and possess, and which is subject to be raised on execution, if it can be reached. But the former part of the same section provides that the debtor shall receive no benefit from the certificate, if he shall transfer, conceal, or otherwise dispose of the personal property, which he shall have disclosed, and which is subject to attachment, within the term of thirty days after the disclosure, and the time, when the certificate shall be given, or suffer the same to be done, or shall refuse to surrender the same on demand of any proper officer, having an execution on the same judgment within the same time. The question presented is, whether such fraudulent acts or omission, shall cause a forfeiture of the bond.

The certificate is merely the evidence of the proceedings recited therein ; it is the latter alone which really confers the benefit upon the debtor, and if they can be legally shown by other evidence, they will have the same validity as when shown

in this mode. And the statute has not made the certificate indispensable, as proof that the oath has been taken. R. S. chap. 148, § 32. *Kimball* v. *Irish*, 26 Maine, 444. But it is a species of proof, which is sufficient, unless in some measure controlled, to show that the oath has been taken, and if done before a forfeiture of the bond has been incurred, to prevent it afterwards. The facts certified are the warrant for the discharge of the debtor from imprisonment, on the execution referred to, if he is in prison at the time of the taking of the oath, and it secures him from arrest from any execution, which shall be issued upon or grow out of the same judgment. But if the certificate should become nugatory under the statute, the proceedings, of which it is the evidence, cannot be effectual. It was not intended that the certificate should only fail to be evidence of what it recited, and allow the debtor to prove the same facts by other evidence; but that the certificate and every thing which it records, should cease to be beneficial to the debtor. If the certificate is affected by his misconduct, so that he can derive no benefit therefrom, it becomes a nullity, and equally so, those facts, which it states, are of no avail. All the benefits, which it may produce to the debtor, while it has effect, will cease when his fraud shall destroy its operation. If made before the breach of the bond, the benefits, which it confers are important; and the statute provides, that he forfeits all benefit therefrom, by the fraudulent conduct mentioned. One of the benefits is to save the forfeiture of the bond, and if the certificate fails to do this, it results that the bond is broken.

This is not a new question. The same point was presented to the whole Court in the case of *Wiggin* v. *Davis & al.* in the county of Somerset in 1846, and after argument it was held, that a breach of the bond had taken place.

It is contended that the bond is not in conformity to the statute, therefore the provisions of the R. S. chap. 148, section 34, do not apply. No copy of the bond has been furnished and it is not the duty of the Court to provide papers, which the parties have omitted to obtain. *Wood* v. *Wyman & al.* 25

Maine, 436. But the variance from the statute requirement, as stated by the defendant's counsel in argument, is not such that we are satisfied the bond fails to be a statute bond ; one of the conditions required by the statute is, that the debtor shall within six months, " deliver himself into the custody of the keeper of the jail." The language of the bond is said to be, " deliver himself and go into close confinement." If there is a substantial compliance with the law, it will be sufficient, although the form should vary. It is the duty of the keeper of the jail, to put into close confinement those, who may be in his custody, under executions. And to go into close confinement under a voluntary surrender of himself, is not essentially different from the delivery of himself to the jailer, when the result must be the same.

The cause must stand for the assessment of damages according to the statute of 1848, entitled " an act additional for the relief of poor debtors."